**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-5146 |
| | § | |
| LEWIS-QUINN CONSTRUCTION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This diversity suit arises from a construction-bond dispute. On September 25, 2012 the court entered a Memorandum and Order granting partial summary judgment for the plaintiff, St. Paul Mercury Insurance Co. ("St. Paul"), on its indemnity claim. (Docket Entry No. 96). The issue raised in the pending motion to dismiss, (Docket Entry No. 105), is the effect of the settlement St. Paul reached on this court's subject-matter jurisdiction. Finding that the settlement and the effect on the parties' interests in the litigation do not destroy diversity jurisdiction, the court denies the motion to dismiss.

The reasons are explained below.

**I.      Background**

St. Paul filed this suit in 2010, seeking indemnity for a payment made to settle a lawsuit arising from a construction bond issued to its insured, Alliance Development, Inc. The bond secured payment by Alliance Development in favor of GE Package Power, LP on the GE Jacintoport Facility Expansion Project. Stewart Builders, Inc. was an Alliance Development subcontractor. (Docket Entry No. 96, at 2). St. Paul sought and received indemnity guarantees from the following entities and individuals involved in the construction project: Lewis-Quinn Construction Services, Inc.;

Curb-Tex, Inc.; Pump-Tech, Inc.; Phoenix Rental, Inc., Joseph V. Turner, and Peggy J. Turner (the "Turner Defendants")[1]; and Galloway Trust Management, James E. Galloway; and Catherine B. Galloway (the "Galloway Defendants").

A parking lot Stewart Builders constructed on the facility proved defective.  Money was withheld to remedy the defects.  (*Id.* at 2–3).  Stewart Builders made a claim on the bond in 2003.  Stewart Builders ultimately sued Alliance Development, Joseph Turner, its chief executive officer, and St. Paul in Texas state court seeking damages relating to the construction project.  (*Id.* at 3).

In 2008, a jury returned a verdict awarding Stewart Builders approximately $1.7 million against Alliance Development and St. Paul.  Two weeks later, St. Paul sent a demand to the indemnitors, including the Galloway and the Turner Defendants, including a demand that they post collateral for the verdict.  The indemnitors did not comply.  (*Id.* at 4).  A few weeks later, St. Paul sued the indemnitors in Texas state court, seeking indemnity for the amount the jury had awarded. (*Id.* at 4–5).  St. Paul, Alliance Development, and Turner appealed from the jury verdict.  In December 2008, while the appeal was pending, St. Paul agreed to pay Stewart Builders $1.6 million for a complete release of liability for the judgment.  St. Paul demanded reimbursement of the $1.6 million it paid and the attorneys' fees it had incurred from Alliance Development, the Galloway Defendants, and the Turner Defendants.  St. Paul filed this lawsuit in 2010 after they refused to pay. (*Id.* at 7, 10–11).

In this suit, St. Paul sought at least $2,163,010.55 as of September 16, 2011.  (*Id.* at 11). This amount included indemnity for the $1.6 million St. Paul paid Stewart Builders to satisfy the judgment against Alliance Development, as well as the attorneys' fees St. Paul had incurred.  (*Id.*

---

[1]  Lewis-Quinn Construction Services, Curb-Tex, and Pump-Tech are separate from the Turner Defendants.  For simplicity, however, this opinion refers to these parties together as the "Turner Defendants."

at 11–12).  St. Paul argued that it was entitled to reimbursement because it had negotiated and paid for a complete release of claims against it and its insured, Alliance Development, from the jury verdict and money judgment in the underlying suit.  In seeking partial summary judgment on its indemnity claim in this court, St. Paul argued that the indemnitors had promised to pay St. Paul for all payments made under the bond, unless the payments were made with "deliberate and willful malfeasance."  (*Id.* at 12).  St. Paul argued that it paid $1.6 million to settle the claim asserted against its insured on the bond and that the indemnitors could not create a fact issue on whether the settlement was "deliberate and willful malfeasance."  (*Id.*).  St. Paul emphasized that:

> The *General Agreement of Indemnity* grants the Surety [i.e., St. Paul] discretion to settle *any claim or demand*.  Had it done so immediately after the underlying litigation was brought under the Bond, the Indemnitors would still be bound by the Surety's settlement. . . . Even when faced with a judgment against it, the Surety still did not settle.  Instead, it asked, yet again, that the Indemnitors perform under their contract with the Surety and post collateral. . . .  The issue here is . . . whether the Surety . . . acted with "deliberate and willful malfeasance" when it settled the underlying litigation.  The answer is no, and there is no evidence to prove otherwise.

(*Id.*).  St. Paul asserted that its decision to pay the judgment against its insured was reasonable and in good faith, considering the likelihood of success on appeal, the potential for creating negative case law in Texas, the indemnitors' failure to post collateral, and the potential of losing Stewart Builders as a client.  (*Id.*).

In September 2012, this court granted St. Paul's motion for partial summary judgment against Alliance Development, the Galloway Defendants, and the Turner Defendants.  (Docket Entry No. 96).  The court ruled that St. Paul was entitled to indemnity and reimbursement as a matter of law.  St. Paul had satisfied a valid money judgment entered by a Texas state court.  The fact that it had done so in lieu of pursuing an appeal that arguably could have reversed some portions of that judgment did not undermine the indemnity right.  The judgment — not the pending appeal — fixed

3

the amount of St. Paul's liability to Stewart Builders.  St. Paul negotiated with Stewart Builders to accept less than the face amount of the judgment and obtained a full release.  Based on the summary judgment record, the court concluded that the record did not create a triable issue of bad faith or other basis for defeating the contractual indemnity obligation.

On November 2, 2012, the Galloway Defendants[2] filed a document that: (1) informed the court that the Galloway Defendants and St. Paul had reached a settlement; (2) asked the court to dismiss all claims between St. Paul and the Galloway Defendants; and (3) sought leave to amend to file crossclaims seeking contribution and indemnity against the Turner Defendants, who had not settled with St. Paul.  (Docket Entry No. 100).  The settlement notification the Galloway Defendants submitted to the court stated:

> (a)      Defendant[ ] James E. ("Jim") Galloway has agreed to, and has begun to pay monetary and other consideration to St. Paul in exchange for a release of all Defendants' liability to St. Paul;
>
> (b)      St. Paul and the Galloway Defendants will dismiss all claims in this Cause between and among each other;
>
> (c)      Jim Galloway reserves the right to reserve and prosecute his claims against the non-settling Defendants under any available legal theories including — each in the alternative — equitable contribution, equitable subrogation, common-law indemnity, and/or unjust enrichment (referred to herein collectively as "Claims for Reimbursement".)

(*Id.*, ¶ 2).  The Galloway Defendants asked this court to enter an order:

> •      Granting leave to amend their pleadings to assert cross-claims against all non-settling Defendants, and to plead for Declarations supporting such claims, including a Declaration of the . . . amount of liability that [t]he Defendant-Indemnitors owed to St. Paul, and the amount of the pro-rata share of liability that the non-settling Defendants owe to Jim Galloway;

---

[2]  Alliance Development also joined the motion.  For simplicity, this opinion refers to Alliance Development and the Galloway Defendants together as the "Galloway Defendants."

4

- Dismissing all claims among and between Plaintiff, St. Paul Mercury Insurance Company and the Galloway Defendants;

- Setting this case for Docket Call and trial, under amended Pleadings.

(*Id.*, ¶ 11).  On November 6, 2012, the court entered an order granting the Galloway Defendants' motion for leave to amend to assert crossclaims against the nonsettling defendants and dismissing the claims between St. Paul and the Galloway Defendants.  (Docket Entry No. 101).  The Galloway Defendants crossclaimed for indemnity or contribution from the Turner Defendants and other nonsettling defendants, seeking reimbursement for all or part of the amount the Galloway Defendants had paid to settle with St. Paul.

On December 24, 2012, the court entered final judgment between St. Paul and the defendants under Rule 54(b) of the Federal Rules of Civil Procedure.  (Docket Entry No. 116).  The final judgment stated:

> As explained in this court's Memorandum and Order granting summary judgment for St. Paul against the Defendants, St. Paul is entitled to judgment against the Defendants jointly and severally.  In light of a post–summary judgment settlement that St. Paul executed with the Galloway Defendants, this court dismissed with prejudice all claims between St. Paul and the Galloway Defendants.  (*See* Docket Entries No. 100, 101).  Although the Galloway Defendants have amended their pleadings to assert additional claims for relief against the remaining Defendants, those claims do not involve St. Paul.  (*See* Docket Entry No. 109).  This court's Memorandum and Order granting summary judgment and this court's Order granting leave to amend, (Docket Entries No. 96, 101), resolved all issues in this case between St. Paul and the Defendants, with the exception of attorneys' fees.

(*Id.* at 2).  The Turner Defendants appealed the final judgment.  (Docket Entry No. 119).

On November 19, 2012, after the settlement announcement and this court's November 6, 2012 order, but before entry of the Rule 54(b) final judgment, the Turner Defendants moved to dismiss the Galloway Defendants' crossclaims against them for lack of subject-matter jurisdiction.

(Docket Entry No. 105).[3]  The Turner Defendants argued that the settlement resolved St. Paul's claims and effectively ended its interest in the case, making the real plaintiffs in interest the Galloway Defendants.  The Turner Defendants argued that because all the Galloway Defendants and the Turner Defendants are Texas residents or corporations, and therefore not diverse to each other, there is no federal diversity jurisdiction over the crossclaims.  The Turner Defendants alternatively argued that if the subject-matter jurisdiction that had been present before St. Paul was dismissed continued, this court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the Galloway Defendants' crossclaims against the Turner Defendants.  (Docket Entry No. 115, at 3–5).

The Galloway Defendants responded that the Turner Defendants were incorrect that the court "should realign the parties because the Galloway Defendants have now become the plaintiffs and the Turner Defendants and other defendants have remained as the defendants in the cross claim." (Docket Entry No. 106, at 7).[4]  The Galloway Defendants argued that despite the resolution of St. Paul's claims against the Galloway Defendants and the addition of the Galloway Defendants' crossclaims, the parties had not changed and realignment was unnecessary.  In a supplemental brief, however, the Galloway Defendants changed position.  They argued that "[u]pon dismissal of claims brought by the original Plaintiff[ ] it will be appropriate to realign the parties according to their interests."  (Docket Entry No. 112, at 1).  But unlike the Turner Defendants, the Galloway Defendants argued that realignment would not deprive the court of diversity jurisdiction.  The Galloway Defendants argued that even if James Galloway's citizenship did not provide an

---

[3] The Turner Defendants supplemented their motion on December 20, 2012, (Docket Entry No. 115), and on May 22, 2013, (Docket Entry No. 141).

[4] The Galloway Defendants supplemented their response on December 7, 2012, (Docket Entry No. 110), December 14, 2012, (Docket Entry No. 112), and May 2, 2013, (Docket Entry No. 138).

independent jurisdictional basis for the crossclaims, supplemental jurisdiction would continue to be appropriate over the crossclaims.  (Docket Entry No. 106, at 2–6).  The Galloway Defendants also argued that the court had diversity jurisdiction over the Galloway Defendants' crossclaims "independent of the Court's jurisdiction over the claims of St. Paul, the original Plaintiff."  (Docket Entry No. 112, at 1).  The Galloway Defendants argued that even if the parties were realigned, diversity jurisdiction under 28 U.S.C. § 1332 would exist because James Galloway was the only Galloway Defendant who could recover against the other nonsettling defendants, and James Galloway was a resident of Hawaii, not Texas.  (Docket Entry No. 106, at 8–11; Docket Entry No. 112, at 5–6).

On February 21, 2013, while the appeal was pending, all parties filed an "Agreed Rule 60(b) Motion for Indicative Ruling" stating:

> Having released all claims against defendants, St. Paul does not intend to pursue enforcement or collection of the Order under Rule 54(b) Entering Final Judgment signed on December 24, 2012.  The judgment is therefore no longer necessary, and the parties request this court to vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b).

(Docket Entry No. 132, at 1 (citation omitted)).  On March 27, 2013, this court entered an order under Rule 62.1 of the Federal Rules of Civil Procedure, stating that "there is a substantial issue as to whether this court will grant the Rule 60(b) motion."  (Docket Entry No. 135, at 2).  The United States Court of Appeals for the Fifth Circuit remanded the case on April 11, 2013.  (Docket Entry No. 137).  This court vacated the Rule 54(b) final judgment on June 10, 2013.  (Docket Entry No. 145).

The issues raised in the pending motion are whether the parties should be realigned because St. Paul's claims have been resolved and only the crossclaims remain, and whether diversity

jurisdiction is still present.  The court heard argument on the motion to dismiss and analyzes the issues based on the record, the applicable law, and the parties' arguments.

## II.     Dismissal for Lack of Subject-Matter Jurisdiction

### A.     The Legal Standard

Federal courts are courts of limited jurisdiction.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  The burden to establish federal jurisdiction is on the party invoking jurisdiction.  *Id.*  Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted).

"As a general rule, diversity of citizenship is determined at the commencement of a lawsuit. Subsequent events, such as a change in citizenship or the amount in controversy falling below $10,000, will not divest the court of subject matter jurisdiction."  *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988) (citing *Carlton v. BAWW, Inc.*, 751 F.2d 781, 785 (5th Cir. 1985)); *see also Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." (quotation omitted)).  One exception to that general rule is that when a suit is based on diversity, the court may examine whether the parties' alignment as plaintiff and defendant comports with their true interests in the litigation.  "[T]he parties' own determination of who are plaintiffs and who defendants," is not enough to create diversity.  *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941).  Realignment is proper when the court finds that no actual, substantial controversy exists between parties on one side of the dispute and their named opponents.  *See id.*

"[T]here must be an actual, substantial controversy between citizens of different states to sustain diversity jurisdiction.  To do that, a court must look beyond the pleadings, and arrange the parties according to their sides in the dispute."  *Zurn Indus.*, 847 F.2d at 236 (citation and quotation omitted).  The focus is on whether diversity is present when the action commenced.  Facts that existed at that time may provide a basis for realignment; facts that arise later may not.

"The objective of *City of Indianapolis* realignment is only to insure that there is a *bona fide* dispute between citizens of different states."  *Id.* at 237 (citation omitted).  "First, the court examines the primary or original purpose for filing suit.  If the parties are not realigned on that claim, and there is no showing that the claim was a sham simply asserted for federal jurisdiction, subject matter jurisdiction exists."  *Id.*  "At that point, the various other claims may be examined to determine if they are properly in the court's [supplemental] jurisdiction or have an independent basis for federal jurisdiction.  If the added claim or party has no proper jurisdictional basis, joinder of that claim or party would not be proper."  *Id.*

### B.      Realignment

This court had diversity jurisdiction when this lawsuit began.  St. Paul is a Minnesota corporation with its principal place of business in Minnesota.  Although there is some dispute as to James Galloway's current citizenship, at the time of filing, the defendants were all Texas residents or corporations.  (*See* Docket Entry No. 1).  There is no dispute that the amount in controversy exceeded the jurisdictional minimum.  The Turner Defendants argue that under *Zurn Industries*, the Galloway Defendants' settlement with St. Paul destroyed the diversity jurisdiction that had been present because the settlement "realigned" the real parties in interest.

There was a *bona fide* indemnity claim between St. Paul and all the defendants when this litigation began.  The primary issue was the defendants' obligation to indemnify St. Paul for the

amounts it had paid that resolved the judgment against its insured.  *See Zurn Indus.*, 847 F.2d at 237.  After this court entered partial summary judgment in favor of St. Paul on its indemnity claim, James Galloway settled with St. Paul on behalf of the Galloway Defendants.  The settlement resolved  St. Paul's indemnity claims against some of the defendants.  The Galloway Defendants asked for and received leave to assert crossclaims against the nonsettling defendants.  Realignment is sought based on the filing of those crossclaims and the dismissal of the St. Paul claims.

In general, "[t]he determination of the 'primary and controlling matter in dispute' does not include the cross-claims and counterclaims filed by the defendants."  *Id.*; *see also id.* at 238 (rejecting the argument that a defendant should be realigned as a plaintiff because it was "the main protagonist in the case" and was "the 'true' plaintiff").  And subsequent events, including the dismissal of a party, do not typically divest the court of federal jurisdiction that was present at the outset.  *See id.* at 236; Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3608, at 364–66 (3d ed. 2009) ("In keeping with the currently prevailing rule, a change of parties, by addition, substitution, or elimination, also will not divest the court of diversity jurisdiction if the nature of the action remains the same, if the court finds that no collusion is involved in the conduct of the parties, or if the change is not an obvious attempt to evade the rule of complete diversity." (footnotes omitted)); 3A Moore's Federal Practice § 19.03, at 52 (2d ed. 1980); *see also Richey v. Wal-Mart Stores, Inc.*, 390 F. App'x 375, 378 (5th Cir. 2010) (per curiam) (holding that an allegedly nondiverse defendant added after removal would not defeat diversity jurisdiction because "this Court considers whether diversity 'exist[ed] at the time of removal.'" (alteration in original) (quoting *Tex. Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000))).

The Turner and Galloway Defendants argue that the parties must be realigned when, as here, after suit is filed, the plaintiff's claims are resolved, leaving only crossclaims among defendants. The cases offer inconsistent guidance.  *See, e.g.*, *Kindrick v. CMI Elecs., Inc.*, 2011 WL 3682777, at *2 (M.D. Ala. Aug. 23, 2011) ("With [the original plaintiff's] claims extinguished, the parties are due to be realigned, and the case is due to be restyled."); *Avirex, Ltd. v. Hialeah Indus, Inc.*, 745 F. Supp. 688, 689–90 (S.D. Fla. 1990) (ruling that diversity as to crossclaims was destroyed by dismissal of the original plaintiff's claim when the crossclaimants were not diverse).  *But see Mabry v. Fluor Corp.*, 2010 WL 2292251, at *2 (E.D. La. June 3, 2010) ("[Defendants] argue that because the Plaintiff in this case has settled her claims against the local [nondiverse] defendants, diversity of citizenship now exists and removal was appropriate.  It does not appear to this Court that any material change has occurred in this case since it was last remanded. . . . [T]he local defendants have not actually been dismissed from the lawsuit.").  *See also Hickman v. Alpine Asset Mgmt. Grp., LLC*, 919 F. Supp. 2d 1038, 1042 (W.D. Mo. 2013) ("[A]lthough Hickman's [federal counterclaims] . . . were not initially removable, the nature of these claims changed when Alpine dismissed all claims against Hickman and Hickman continued with her claims against Alpine.  When Hickman's claims against Alpine seeking damages were the only claims in the pending state court case, the original state court designations of Alpine as the plaintiff and Hickman as the defendant became nominal only.  At this point, Hickman was substantively the plaintiff and Alpine was substantively the defendant."); *CitiMortgage, Inc. v. Sanders*, 2012 WL 6024641, at *1 (D. Kan. Dec. 4, 2012) ("After CitiMortgage voluntarily dismissed its claim for foreclosure without prejudice, the state court realigned the Borrowers as plaintiffs and CitiMortgage as defendant based on the Borrowers' pending counterclaim.").

The cases recognize, however, that even if realignment is proper in such a case, it is subject to limits.  For example, when a plaintiff's complaint is dismissed, a counterclaimant is not necessarily realigned so as to grant that party the status of a defendant able to remove a case.  Another limit is that the facts forming the basis of any realignment typically must exist when the suit was filed.  And, most important for this case, even if the parties are realigned, that may not destroy the diversity jurisdiction that was present when the case commenced.

*Kindrick* is instructive.  The plaintiff, RBC Bank, sued CMI Electronics and Kindrick, its former president, to collect a note that CMI owed and Kindrick guaranteed.  The plaintiff and defendants were diverse.  Kindrick crossclaimed against CMI and impleaded those who later assumed control of CMI as third-party defendants, alleging that those individuals had assumed all of his liabilities on the note.  CMI filed for bankruptcy.  The third-party defendants and CMI were not diverse from Kindrick.  They counterclaimed and crossclaimed against Kindrick for fraudulent misrepresentation.  The court granted summary judgment for RBC Bank against Kindrick and entered final judgment for RBC Bank against Kindrick.  In June 2011, CMI's bankruptcy case was closed.  RBC Bank was listed in the bankruptcy court's claims register as a secured creditor of CMI, although it did not ultimately receive any assets from CMI's estate.  In August 2011, the court dismissed RBC Bank's claims against CMI, with prejudice.  2011 WL 3682777, at *1.  The court explained that "[w]ith RBC Bank's claims extinguished, the parties are due to be realigned."  *Id.*, at *2 (citing *City of Indianapolis*, 314 U.S. at 69).  "Mr. Kindrick now stands as Plaintiff in this action, pursuing claims for breach of contract and fraud against Remaining Defendants.  Remaining Defendants also retain their surviving counterclaims and crossclaims against Mr. Kindrick."  *Id.*  The court restyled the case to reflect those facts.  *Id.*, at *6.

The realignment, however, did not destroy diversity jurisdiction.   "[T]he parties misapprehended the jurisdictional question posed by RBC Bank's anticipated dismissal and the subsequent realignment of the parties.   Rather than arguing whether the court should, in its discretion, retain supplemental jurisdiction over this controversy, the parties instead solely focused on whether the court retains original jurisdiction over the remaining state law claims."   *Id.*, at *4. The court had original diversity jurisdiction over the suit when RBC Bank filed it.   *Id.*   Although the court found no independent basis for original subject-matter jurisdiction over the state-law counterclaims and crossclaims under 28 U.S.C. § 1332(a) (diversity jurisdiction) or § 1334(b) (related-to bankruptcy jurisdiction), the court exercised its discretion to retain supplemental jurisdiction over the counterclaims and crossclaims under § 1367.   *Id.*, at *6 ("Because there is no longer an independent basis for original subject-matter jurisdiction over the remaining state law claims, the court may, in its discretion, decline to exercise supplemental jurisdiction in this matter." (citing 28 U.S.C. § 1367(c)).

In the present case, the motion to dismiss based on a lack of subject-matter jurisdiction that would result from realignment fails.   First, nothing requires that realignment be ordered.   St. Paul prevailed on its motion for summary judgment that it was entitled to indemnity for the amount it paid to settle the underlying suit against its insured.   St. Paul and the Galloway Defendants then settled St. Paul's indemnity claim against those defendants.   The (settling) Galloway Defendants and the (nonsettling) Turner Defendants have crossclaims against each other to resolve whether they are obligated to pay all or part of what the Galloway Defendants paid St. Paul.   The crossclaimants argue that St. Paul has no further interest in the suit.   St. Paul has indicated that it will not seek further recovery from the nonsettling defendants.   But St. Paul's claims have not been extinguished. This court's dismissal order, (Docket Entry No. 101), dismissed St. Paul's claims between it and the

13

Galloway Defendants.  The final judgment in St. Paul's favor, (Docket Entry No. 116), which dismissed its claims (other than for attorneys' fees) based on the summary judgment ruling and the parties' settlement, has been vacated.  Although the Galloway Defendants' settlement appears to have compensated St. Paul for attorneys' fees to some extent, St. Paul's claim for attorneys' fees has not been dismissed.  St. Paul is still a party.  Realignment is not required at this time.

Even if realignment were ordered, however, it would not destroy this court's subject-matter jurisdiction.  As in *Kindrick,* if the court realigned and restyled to make James Galloway or the Galloway Defendants plaintiffs, doing so would not eliminate the subject-matter jurisdiction that existed when the suit was filed.  Original jurisdiction existed when this suit commenced.  Supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining crossclaims is proper — discretionary, but proper — even with no independent basis for diversity jurisdiction for those crossclaims between the Galloway Defendants and the Turner Defendants.

*Zurn Industries* and the treatises cited above support this conclusion.  In *Zurn Industries*, the court recognized that "there are situations where [an] additional claim or party may result in . . . dismissal" and that "[i]f the case cannot continue with the added party or if the amendment of the pleadings alters the nature of the action, jurisdiction must be reassessed at that time."  847 F.2d at 237.  The Galloway Defendants' amended pleadings assert crossclaims under Rule 13(g) of the Federal Rules of Civil Procedure.  The *Zurn Industries* court did not recognize newly asserted crossclaims as a basis for reassessing diversity jurisdiction.  *See id.* at 236–37 ("If the claim is a . . . cross-claim . . . the court has [supplemental] jurisdiction over the claim or party even in the absence of an independent basis for federal jurisdiction.").[5]  If, by contrast, the new claim is "only

---

[5] The *Zurn Industries* court stated:

a permissive counterclaim, Fed. R. Civ. P. 13(b), or if [a] party is brought in pursuant to Fed. R. Civ. P. 19 or 20, there is no [supplemental] jurisdiction and there must be an independent ground for federal jurisdiction. . . . If the case cannot continue with the added party or if the amendment of the pleadings alters the nature of the action, jurisdiction must be reassessed at that time." *Id.* (citations omitted). The Galloway Defendants and the Turner Defendants have been defendants since St. Paul filed suit. That St. Paul claimed indemnity from both groups of defendants jointly and severally has not changed. The amendment to add the Galloway Defendants' crossclaims — to apportion among the defendants liability fixed by settlement rather than by judgment — does not alter the nature of the action.

The parties need not be realigned based on the settlement between St. Paul and the Galloway Defendants. Even if realignment occurred as the Turner Defendants propose, federal jurisdiction remains. The Galloway Defendants' settlement with St. Paul and the filing of crossclaims against the nonsettling Turner Defendants do not defeat the federal jurisdiction that was present when this suit was filed. This court has discretion to exercise supplemental jurisdiction over the crossclaims. The Turner Defendants argue that this court should decline to continue to exercise supplemental jurisdiction over the crossclaims under 28 U.S.C. § 1367. The court turns to that question.

## III.    Supplemental Jurisdiction Over the Crossclaims

---

Once subject matter jurisdiction is proper, the court may have ancillary jurisdiction over additional claims or parties that it may not have had otherwise. Whether the court has ancillary jurisdiction over the claim or party depends on the type of claim or party. If the claim is a compulsory counterclaim, Fed. R. Civ. P. 13(a), a cross-claim, Fed. R. Civ. P. 13(g), or if the party is added pursuant to a counterclaim or cross-claim, Fed. R. Civ. P. 13(h), or impleaded, Fed. R. Civ. P. 14, the court has ancillary jurisdiction over the claim or party even in the absence of an independent basis for federal jurisdiction.

847 F.2d at 236–37.

When a federal district court has original subject-matter jurisdiction, the court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). To determine whether to exercise jurisdiction or to remand, the court balances "the statutory factors set forth by 28 U.S.C. § 1367(c), the common law factors of judicial economy, convenience, fairness, and comity, and the threat of improper forum manipulation." *Burnett v. Petroleum Geo–Services, Inc.*, 2013 WL 1723011, at *5 (N.D. Tex. Apr. 22, 2013) (quoting *Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011)) (internal quotation marks omitted). The statutory factors are: (1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

The statutory factors on balance weigh in favor of continuing to exercise supplemental jurisdiction. The parties dispute whether the Galloway Defendants' indemnity and contribution claims for recovery against the Turner Defendants raise novel issues of state law. The Turner Defendants argue that there is little or no Texas case law on point. But such claims are hardly novel and other cases present far more complex legal, factual, and contractual issues. The second and third § 1367(c) factors weigh against exercising supplemental jurisdiction because the claims that gave rise to original federal jurisdiction have been resolved, leaving the key issues to be resolved those arising from the Galloway Defendants' crossclaims. Under the fourth factor, the "heavy balance of the common law factors" of efficiency, convenience, and fairness weighs heavily in favor of retaining jurisdiction. *See Enochs*, 641 F.3d at 159. This court resolved the indemnity issues after lengthy discovery and motions practice. The remaining disputes are factually and legally related

16

to, and arise from, the same indemnity issues.  This case has been pending for nearly three years.  This court is familiar with the facts, the parties, and the legal issues.  Remanding would require a new judge to acquire this familiarity, which is inefficient, and would cause significant further delay.  *See, e.g.*, *Kindrick*, 2011 WL 3682777, at *6 ("This case has been pending in this court for over two-and-a-half years, discovery is complete, and the court is familiar with the facts and complicated procedural posture of this case.  It would be inconvenient to both Mr. Kindrick and Remaining Defendants to further delay trial . . . .").  Resolving the remaining issues in this court will promote convenience, economy, and fairness for the parties and efficiency for the federal and state courts.

The Galloway Defendants also argue that the crossclaims have an independent jurisdictional basis because James Galloway and the Turner Defendants are diverse.  Because this court finds that it is proper to exercise supplemental jurisdiction over the crossclaims, it is unnecessary to decide whether there is an independent jurisdictional basis for the crossclaims under 28 U.S.C. § 1332.

## IV.    Conclusion

The motion to dismiss is denied.

SIGNED on September 3, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

17